[No. 20081. Department One. January 6, 1927.]

LEWIS KNUTSON, *Respondent,* v. JENS O. HANSEN *et al., Appellants.*[1]

[1] SHIPPING (11)—MASTER'S AUTHORITY. The liability of a master of a vessel for misappropriation of funds is not affected by the fact that he had never been commissioned but merely succeeded to the command.

[2] PLEADING (171)—VARIANCE—EVIDENCE ADMISSIBLE UNDER PLEADINGS—FRAUD. It is not a failure of proof to allege that a master of a vessel wrongfully appropriated money intrusted to him, and to prove that he carelessly and negligently failed to collect the money and lost it through carelessness.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered February 25, 1926, in favor of the plaintiff, in an action for money had and received, tried to the court. Affirmed.

*Tucker, Hyland & Elvidge (Mary H. Alvord,* of counsel), for appellant.

*Martin J. Lund,* for respondent.

[1]Reported in 251 Pac. 852.

Tolman, C. J.—Respondent, as plaintiff below, brought this action, alleging that he was the owner of a certain vessel engaged in fishing off the coast of Alaska; that the vessel was supplied on credit at an expense exceeding the amount here involved and was operated on a profit-sharing basis—that is, when the catch was sold the supplies for the trip were first to be paid for out of the proceeds and the remainder was to be divided, twenty per cent to the vessel and the balance, share and share alike, to the crew; that, upon the particular trip in question, the vessel landed at Prince Rupert, B. C., the catch was sold for $525.90 and that the defendant Jens O. Hansen (appellant here) was captain of the vessel, collected all the money and appropriated it all to his own use, though no part thereof was due him, and the amount was no more than sufficient to pay for the supplies bought upon the credit of the vessel and used on the trip; that the plaintiff, as owner of the vessel, was liable for, and to protect the vessel from lien was compelled to and did pay, $525.90 for supplies used on the trip; and judgment was demanded for that sum. The answer admits that the vessel was supplied on credit; that the proceeds of the catch were to be used to pay for such supplies and the remainder to be divided as alleged in the complaint; admits that the catch sold for five hundred and twenty-five dollars; but denies that the defendant, J. O. Hansen, as captain of the vessel, collected or appropriated the proceeds of the catch to his own use.

Upon these issues the cause was tried to the court sitting without a jury, and there was ample evidence to sustain the following finding made by the court upon the contested issues, namely:

"(3.)   That on or about April 20, 1925, the defendant Jens O. Hansen was master of said vessel and landed at the port of Prince Rupert in British Colum-

bia and sold the catch of said vessel for $525. That
the charge against said vessel for supplies of oil, pro-
vision, ice and bait consumed on the cruise amounted
to more than the amount of $525 received for the
catch, and it was the duty of said defendant Jens O.
Hansen, to apply said sum and the whole thereof in
the payment of the supplies so furnished and con-
sumed, and that he negligently and carelessly failed
and neglected so to do, and that the plaintiff, as owner
of said vessel, was compelled to pay and to assume
payment of said sum for said supplies to protect said
vessel from maritime liens for said supplies."

The appellant seems to make two contentions:

[1] The first, while not very clearly set out and
apparently not seriously relied upon, has its founda-
tion in the fact that Jens O. Hansen had originally
been cook on the vessel; that the former master gave
up command and left the vessel; and that Hansen,
being the only American citizen among the crew and
for that reason the only person entitled to command,
was made master. All of this can be gathered from
the evidence, but it nowhere appears that Hansen was
any less the master of the vessel by reason thereof, or
had any less authority than would have been the case
if he had been commissioned as master originally in
the regular way.

[2] The second contention seems to be that the
action was brought and tried on the theory that Han-
sen collected the money from the catch and wrongfully
misapplied it, while the findings and judgment were
entered on the theory that Hansen negligently failed
to collect the money, thus making a departure, or that
there was a failure of proof of the wrongful conver-
sion of the money, which is fatal.

It is true that Hansen's testimony indicates that he
did not actually collect the money, but negligently per-
mitted a check, drawn in his name, to remain in the

hands of a member of the crew named Peterson, who acted as fish boss, and that he, Peterson, might have forged, and perhaps did forge, Hansen's indorsement on the check and procure the money. At any rate, Hansen denies ever having indorsed or cashed the check, or ever having seen it except as he glanced at it when it was in Peterson's possession on board the vessel on the day that the catch was sold. Respondent proved very clearly the sale of the catch for the amount heretofore indicated and that a check therefor was made by the purchaser to the order of J. O. Hansen, as master of the vessel, for the purchase price; that Hansen knew that fact; that it was his duty to take and cash the check and properly apply the proceeds; that the check was cashed, with the name "J. O. Hansen" indorsed thereon, thus raising the legal presumption that Hansen indorsed the check and received the money thereon.

The burden was, of course, upon the appellant, after this evidence had been received, to establish that he did not cash the check; and, also as a part of his defense, he undertook to show that he did not negligently permit another to cash it. According to the findings of the trial court, appellant so far succeeded in meeting this burden as to prevent a finding that he indorsed and cashed the check, and so far failed to meet the burden as to cause the court to find that he negligently and carelessly failed and neglected to obtain the cash upon the check. We therefore can not see that there is here any departure, or any failure of proof upon the part of the respondent. When a check is indorsed in the name of the drawee and paid by the bank upon which it is drawn, a presumption of law is thereby raised that the indorsement was regular and that the payee named in the check received the money, and the burden is upon him to establish the contrary.

Because of Hansen's interest in the results, the court might very well have declined to believe his testimony and found that he did indorse and cash the check. But, however that may be, the gist of the action was the recovery of the money misapplied, and it makes no legal difference whether it was misapplied wilfully and feloniously or through neglect and carelessness. The legal result is the same, and under all the testimony, Hansen was clearly liable.

It would be a useless and foolish thing to reverse and remand the cause in order that the pleadings might be amended to charge negligence and carelessness only, the case again tried on the same testimony and the same result reached in the end.

Finding no error, the judgment is affirmed.

HOLCOMB, MAIN, MITCHELL, and FULLERTON, JJ., concur.